# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**TOMIKA D. SHAW,**

        **Petitioner,**

                                 **Case No. 1:02-CV-830**

**v.**                                    **Hon. Gordon J. Quist**

**KURT JONES,**

        **Respondent.**

_____/

## REPORT AND RECOMMENDATION

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### Background

        On March 29, 1997, petitioner's girlfriend, Amanda Salas (hereafter referred to as "the victim"), suffered fatal gunshot wounds to the head.  Trial Trans. II at 89, 94-96; Trial Trans. XIII at 98-110.  Petitioner was charged with first degree premeditated murder.  Petitioner and co-defendant, Russell Allen, were tried together with separate juries.  Trial Trans. II at 5.  The trial lasted 15 days, with the state calling over forty witnesses in its case in chief. Petitioner was convicted of first degree premeditated murder, MCL § 750.316 and conspiracy to commit first degree murder, MCL § 750.157(a), for requesting and directing Russell Allen to shoot and kill the victim.  Judgment of Sentence (docket no. 42); Trial Trans. Vol. XV at 121, 139-40.  The trial court sentenced petitioner to the mandatory term of life imprisonment for each conviction.

Petitioner filed an appeal in the Michigan Court of Appeals raising eight issues:

I.      Was defendant denied due process of law and his right of confrontation by the trial court's erroneous decision to allow hearsay testimony which was inadmissible either as a statement by a co-conspirator or as a statement against interest; defendant was convicted on the basis of the inadmissible hearsay.  US Const Am VI, XIV; Mich Const Art 1 § 17?

II.     Was defendant [d]enied a fair trial by the introduction of hearsay statements made by the co-defendants during or concerning a dream which were completely unreliable as well as involuntary?  US Const Am XIV; Const 1963 Art 1 § 17.

III.    Did the trial court deny defendant a fair trial by admitting hearsay evidence, including the deceased's diary, under the state of mind exception where the declarant's state of mind was not in issue?  US Const Am XIV, Const 1963 Art 1 § 17.

IV.     Did the prosecutor deny defendant a fair trial by emphasizing repeatedly that the star prosecution witness expected absolutely no consideration on his murder charge in return for his testimony against defendant?  US Const Am XIV; Const 1963, Art 1 § 17.

V.      Was defendant denied a fair trial when opinion testimony was solicited from the detective regarding defendant's credibility and whether the shooting was gang-style or execution-style?  US Const Am XIV; Const 1963 Art 1 § 17.

VI.     Was defendant denied a fair trial by testimony of threats against the star prosecution witness and another witness which were not connected to defendant, and which were used to improperly bolster the credibility of witness Allen, along with the inadmissible evidence that Allen had no prior convictions?  US Const Am XIV; Const 1963, Art 1, § 17.

VII.    Did the prosecutor deny defendant a fair trial by comparing Detective Nowicki with Detective Furman, thereby comparing defendant to O.J. Simpson?  US Const Am XIV; Const 1963 Art 1 § 17.

2

       VIII.    Was defendant denied a fair trial by the prosecutor's tactic of asking numerous witnesses how many children by how many different girlfriends defendant had fathered, inflammatory character testimony which had no relevance to the murder charge?  US Const Am XIV, Const 1963, Art 1, § 17.

Petitioner's Brief (docket no. 42).

       Petitioner filed a supplemental brief raising the following issue:

       IX.    Was defendant denied due process where the prosecution intimidated several witnesses in order to gain their testimony?

Petitioner's Supplemental Brief (docket no. 42).

       The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Shaw*, No. 211825 (Mich. App.) (Feb. 29, 2000) (docket no. 42). Petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Shaw*, No. 116862 (Mich. Oct. 30, 2000) (docket no. 37).

       Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, which the trial court denied because "[e]very issue raised could have been raised on appeal and is, therefore, not an appropriate subject for such a motion."  *People v. Shaw*, Kent Cir. Ct. No. 97-09637-FC (Dec. 10, 2001).  Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, which raised three issues:

       I.    The prosecutor denied defendant his due process right to a fair trial, by entering inadmissible evidence, by making an improper argument during summation and by failing to turn over discovery material.

       II.    Defendant was denied his state and federal constitutional right to effective assistance of counsel.

         (a)  [Trial] counsel's performance was deficient for her failure to develop a rational defense strategy.

> (b) Trial counsel's performance was deficient for her failure to effectively cross-examine the main [prosecution] witnesses.
>
> (c) Trial counsel's performance was deficient for her failure to produce exculpatory evidence.
>
> (d) Trial counsel's performance was deficient for her failure to object to inadmissible evidence.
>
> III. Defendant was denied his state and federal constitutional right to effective assistance of appellate counsel.

*See* docket no. 20.

The Michigan Court of Appeals denied leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Shaw*, No. 238989 (Mich. App. May 7, 2002) (docket no. 41). Petitioner raised the same grounds in his application for leave to appeal to the Michigan Supreme Court, which denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Shaw*, No. 121599 (Mich. Oct. 29, 2002) (docket no. 36).

Now, petitioner has raised issues eleven issues in his petition for federal habeas relief:

> I. Petitioner was denied due process of law and his right of confrontation by the trial court's erroneous decision to allow hearsay testimony which was inadmissible either as a statement by a co-defendant or as a statement against interest; defendant was convicted on the basis of the inadmissible hearsay. US Const Am VI, XIV; Mich Const Art 1 § 17.
>
> II. Petitioner was denied a fair trial by the introduction of hearsay statements made by the co-defendant during or concerning a dream which were completely unreliable as well as involuntary. US Const Am XIV; Const 1963 Art 1 § 17.
>
> III. The prosecutor denied petitioner a fair trial by comparing Detective Nowicki with Detective Furman, thereby comparing

4

defendant to O.J. Simpson.  US Const Am XIV; Const 1963 Art 1 § 17.

IV.  Petitioner was denied due process where the prosecution intimidated several witnesses in order to gain their testimony?

V.  Petitioner was denied a fair trial by testimony of threats against the star prosecution witness and another witness which were not connected to defendant, and which were used to improperly bolster the credibility of witness Allen, along with the inadmissible evidence that Allen had no prior convictions.  US Const Am XIV; Const 1963, Art 1, § 17.

VI.  Petitioner was denied a fair trial by the prosecutor's tactic of asking numerous witnesses how many children by how many different girlfriends defendant had fathered, inflammatory character testimony which had no relevance to the murder charge.  US Const Am XIV, Const 1963, Art 1, § 17.

VII.  Petitioner was denied a fair trial when opinion testimony was solicited from the detective regarding petitioner's credibility and whether the shooting was gang-style or execution-style.  US Const Am XIV; Const 1963 Art 1 § 17.

VIII.  The prosecutor denied petitioner a fair trial by emphasizing repeatedly that the star prosecution witness expected absolutely no consideration on his murder charge in return for his testimony against defendant.  US Const Am XIV; Const 1963, Art 1 § 17.

IX.  The prosecutor denied defendant his due process right to a fair trial, by entering inadmissible evidence, and by failing to turn over discovery material.

X.  Petitioner was denied his state and federal constitutional right to effective assistance of counsel.

   (a)  Trial counsel's performance was deficient for her failure to develop a rational defense strategy.

(b)     Trial counsel's performance was deficient for her failure to effectively cross-examine the main prosecution witnesses.

(c)     Trial counsel's performance was deficient for her failure to produce exculpatory evidence.

(d)     Trial counsel's performance was deficient for her failure to object to inadmissible evidence.

XI.    Petitioner was denied his state and federal constitutional right to effective assistance of appellate counsel.

Petition (docket no. 1).

## Discussion

### I.    Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996, which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Lopez v. Wilson*, No. 01-3875, slip op. at 3 (6th Cir. Oct. 7, 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, slip op. at 3, *citing Williams*, 529 U.S. at 405.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## II.     Procedural default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A state procedural rule will support an application of the procedural default doctrine only if the rule was "firmly established

and regularly followed" at the time it was applied. *Ford v. Georgia*, 498 U.S. 411, 424 (1991). "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). In the present case, it appears that petitioner has defaulted his federal claims raised Issues I, III, IV, V, VI, VII, VIII, IX, X and XI. Accordingly, these claims are subject to a procedural default analysis.

### A. Claims not properly presented to the trial court

Petitioner raised Issues I, III, IV, V, VI, VII and VIII in his direct appeal. However, the Michigan Court of Appeals, on procedural grounds, did not address the merits of these claims.

### 1. Issue I

Petitioner's Issue I consists of three sub-issues: (1) that the trial court erred in admitting hearsay testimony offered by Tobias Allen regarding co-defendant Russell Allen (2) that the trial court erred in admitting other hearsay testimony offered by Tobias Allen and (3) that the trial court erred in admitting hearsay testimony offered by Aaron Shaw. Respondent contends that the Michigan Court of Appeals considered all three sub-issues as unpreserved for appellate review. The court agrees with respondent regarding sub-issues (1) and (3), but disagrees with respondent's contention regarding sub-issue (2). The Michigan Court of Appeals specifically addressed the merits of sub-issue (2), which involved "other hearsay testimony" offered by Tobias Allen. *People v. Shaw*, No. 211825, slip op. at 1-2. Accordingly, this matter will be addressed on the merits. *See* § III.A., *infra*.

### a.      Sub-issue (1)

The Michigan Court of Appeals rejected petitioner's contention that the trial court erred in admitting the hearsay testimony of Tobias Allen. Petitioner argues that Tobias Allen's testimony regarding statements made by co-defendant Russell Allen should not have been admitted, because there was no independent proof of a conspiracy as required by MRE 801(d)(2)(E). *People v. Shaw*, No. 211825, slip op. at 1. This rule provides that "a statement is not hearsay if . . . [t]he statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(E). The court held that "[b]ecause defendant did not raise this argument in the trial court, it is not preserved for appellate review." *People v. Shaw*, No. 211825, slip op. at 1. The court further found that petitioner's argument was without merit because there was sufficient independent evidence that defendant and co-defendant Russell Allen formed a conspiracy to kill the decedent. *Id.*

Under Michigan law,  "issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123(1994).  The rule that a defendant who waives an objection may not seek appellate review of a claimed deprivation of his rights was a regularly followed procedural rule prior to petitioner's trial. *See, e.g.*, *People v. Pollick*, 448 Mich. 376, 386-88; 531 N.W.2d 159 (1995), *quoting People v. Hardin*, 421 Mich. 296, 322-23; 365 N.W.2d 101 (1984) (enforcing contemporaneous objection rule and noting that the court did not approve a procedure whereby counsel may "sit back and harbor error to be used as an appellate parachute in the event of jury failure").  As reflected in the Michigan Court of Appeals opinion, the contemporaneous objection

was firmly established and regularly followed at the time of petitioner's appeal. *People v. Shaw*, No. 211825, slip op. at 1.

Michigan's contemporaneous objection rule is a sufficient ground to foreclose review of a habeas petitioner's claim. *Lancaster v. Adams*, 324 F.3d 423, 437 (6th Cir. 2003). Even though the state court provided limited review of the issues raised, petitioner's failure to object is still considered a procedural default. *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, petitioner's claim that the court erred in allowing Tobias Allen to give hearsay testimony related to Russell Allen is procedurally defaulted.

### b.    Sub-issue (3)

The Michigan Court of Appeals also held that petitioner waived his claim of error regarding Aaron Shaw because he failed to identify the particular statements by Aaron that are alleged to have been impermissible hearsay. *People v. Shaw*, No. 211825 (Mich. App.), slip op. at 2. The appellate court held that petitioner waived this claim of error, applying the procedural rule that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. *People v. Kelly*, 231 Mich. App. 627, 640-641; 588 N.W.2d 480 (1998)." *Id.*

Michigan appellate courts follow a rule that an appellant abandons an inadequately briefed his argument on appeal. Michigan appellate courts consider an inadequately briefed argument abandoned when an appellant merely announces his position and leaves it to the appellate court "to discover and rationalize the basis for his claims" or when he "give[s] only cursory treatment with little or no citation of supporting authority" for his claims. *Kelly*, 231 Mich. App.

at 640-41.  Michigan appellate courts have applied this rule for many years prior to petitioner's appeal.  *See Goolsby v. Detroit,* 419 Mich. 651, 655, n. 1; 358 N.W.2d 856 (1984) (noting that a claim was abandoned where the parties "have made only a brief presentation which can hardly be classified as an argument, have not cited the record to support their factual assertions in regard to that argument, have not explained how the facts asserted amount to a breach of any legally cognizable duty, and have failed to cite any authority in support of their argument").  In *Mitcham v. Detroit*, 355 Mich. 182, 203;  94 N.W.2d 388 (1959), the court stated that the failure to brief a question on appeal is tantamount to abandoning it.  "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.  The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow."  *Mitcham*, 355 Mich. at 203.[1]

   The Michigan court's requirement that an appellate issue be adequately briefed and supported by citations to the record was firmly established and regularly followed when it was applied in petitioner's case.  *See Ford*, 498 U.S. at 424; *Mitcham*, 355 Mich. at 203.  Petitioner violated this rule and the Michigan Court of Appeals denied petitioner's claim based on this default.  *People v. Shaw*, No. 211825 (Mich. App.), slip op. at 2.  Accordingly, petitioner's claim has been procedurally defaulted for purposes of federal habeas review.

---

[1] The Sixth Circuit applies a similar rule.  *See generally, Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004) ("[i]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waive") (internal quotations omitted).  The failure to follow this appellate rule can serve as the basis for a procedural default. *See Lowe v. Frank*, No. 03-C-0266-C, 2004 WL 67645 at *7 (W.D. Wis. Jan. 9. 2004) (Wisconsin state court's application of rule that "a party who fails adequately to develop legal arguments in a brief waives the issue" established a procedural default barring habeas relief).

### 2.      Issue V

In Issue V, petitioner claims that the prosecutor improperly bolstered Tobias Allen's testimony (1) by eliciting testimony that Tobias had been threatened, called a snitch and assaulted while in jail, and (2) by presenting inadmissable evidence that Tobias had no prior convictions. *People v. Shaw*, No. 211825, slip op. at 5-6.  The Michigan Court of Appeals held that objections about testimony of threats was unpreserved because petitioner did not object to these questions at trial. *Id.* at 5.   Because petitioner failed to object to the testimony regarding threats made to Tobias Allen, that claim is procedurally defaulted.  *See Lancaster*, 324 F.3d at 437.

The Michigan Court of Appeals also held the testimony regarding Tobias' prior felony convictions was not properly presented for appellate review because petitioner "fail[ed] to provide any citation to the record."  *People v. Shaw*, No. 211825, slip op. at 5.  For the reasons discussed above, petitioner's inadequately briefed claim is procedurally defaulted. *See Ford*, 498 U.S. at 424; *Mitcham*, 355 Mich. at 203.

### 3.      Issues IV and VI

In Issue IV, petitioner claims that he was denied due process because the police intimidated several witnesses in order to obtain their testimony.  In Issue VI, petitioner claimed that the prosecutor improperly asked many of the witnesses how many children he fathered and by how many different women.  The Michigan Court of Appeals concluded that petitioner did not properly present either of these issues for appellate review, because he failed to provide any citation to the record, *citing Kelly*, 231 Mich. App. at 640-41.   *People v. Shaw*, No. 211825, slip op. at 6.  Accordingly, petitioner's Issues IV and VI are procedurally defaulted.  *See Ford*, 498 U.S. at 424; *Mitcham*, 355 Mich. at 203.

### 4.      Issues III, VII and VIII

In these three issues, petitioner raises claims of prosecutorial misconduct.  In Issue III, petitioner contends that he was denied a fair trial by the prosecution's act of comparing his case to the O.J. Simpson case.  In Issue VII, petitioner contends that he was denied a fair trial because the prosecutor improperly elicited opinion testimony from Detective Nyquist that the shooting of the decedent resembled an execution rather than a gang murder.  In Issue VIII, petitioner contends that the prosecutor  elicited false testimony when Tobias Allen testified that he had not been promised anything (i.e., a deal) with regard to a pending murder charge in an unrelated case.  In all three instances, the Michigan Court of Appeals found that review was precluded because petitioner failed to object at trial.  *People v. Shaw*, No. 211825, slip op. at 4, 6.   These three issues are procedurally defaulted because petitioner failed to comply with Michigan's contemporaneous objection rule.  *See generally, Lancaster*, 324 F.3d at 437.   *See also Toler v. McGinnis*, 23 Fed.Appx. 259, 269 (6th Cir. 2001) (failure to object to allegations of prosecutorial misconduct at trial constitutes a procedural default under Michigan law).  Accordingly, petitioner's Issues III, VII and VIII are procedurally defaulted.

### 5.      Cause and prejudice or manifest injustice

Petitioner does not present any cause for the procedural default of Issues I (sub-issues 1 and 3), III, IV, V, VI, VII and VIII.  Petitioner's failure to demonstrate cause prevents federal habeas review of these claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the  fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the district court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. *See, e.g., Paffhousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000) ("[i]n order to establish actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.*

Petitioner presents no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, petitioner's procedural default precludes habeas review of Issues I (sub-issues 1 and 3), III, IV, V, VI, VII and VIII.

### B.    Claims presented in petitioner's post-trial motion

### 1.    Issues IX, X and XI

Petitioner first raised Issues IX, X and XI in his motion for relief from judgment filed pursuant to MCR 6.500 *et seq.* In Issue IX, petitioner contends that the prosecutor denied his due process rights by entering inadmissible evidence and failing to turn over discovery material. In Issue X, petitioner contends that his trial counsel was constitutionally ineffective. Then, in Issue XI, petitioner contends that his appellate counsel was constitutionally ineffective for not raising these issues on appeal. The trial court denied the motion pursuant to MCR 6.508(D) because petitioner could have raised the issues on appeal and failed to show good cause for failing to do so. *People v. Shaw*, Kent Cir. Ct. No. 97-09637-FC (Dec. 10, 2001). Both the Michigan Court of Appeals and the

14

Michigan Supreme Court denied petitioner leave to appeal because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Shaw*, No. 121599 (Mich.); *People v. Shaw*, No. 238989 (Mich. App.).

The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. "It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). *See Simpson*, 238 F.3d at 407-08 (6th Cir.2000); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). A habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* Accordingly, petitioner's Issues IX, X and XI are procedurally defaulted.

### 2.      Cause and prejudice or manifest injustice

In Issue XI, petitioner states that his appellate counsel was ineffective for failing to raise Issues IX and X on appeal. The court will consider petitioner's claim of ineffective assistance of appellate counsel as both an independent claim and as cause for the procedural default. Ineffective assistance of counsel may constitute cause for excusing a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective counsel will serve as a cause only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington.* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court, set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that

15

counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Moreover, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claims despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486-87.

It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 447 U.S. 527, 536 (1986). On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752 (quoting R. Stern, Appellate Practice in the United States 266 (1981)). As a general rule, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In this regard, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### a.     Issue IX

In Issue IX, petitioner contends that the prosecutor engaged in misconduct when he injected damaging inadmissible hearsay into the trial and failed to turn to turn over evidence.

### i.     Tanya Salas' testimony

The testimony at issue involved a statement made by the victim to her sister, Tanya Salas, that petitioner threatened to kill her. Trial Trans. XIII at 69. In an earlier motion hearing, the

court held that "Tonya [sic] Salas saying her sister [the victim] told her that [petitioner] had threatened to kill her is inadmissible, because it's hearsay, and it doesn't seem to fit under any of the exceptions." Motion Trans. Jan. 27, 1998 at 19.  However, the court qualified its ruling by stating, "[s]o that's where we are at the present time." *Id.* (Emphasis added).

During the trial, Tanya was questioned at length regarding the relationship that existed between petitioner and the victim.   When the prosecutor asked Tanya, "[d]id [the victim] express what her future plans were or thoughts regarding [petitioner]," petitioner's counsel objected that "[a] lot of this is hearsay at this point regarding the statements that [the victim] was making." Trial Trans. XIII at 45.  The court overruled counsel's objection stating:

> There are exceptions to the Hearsay Rule, one of which is for statements which do not purport to be statements of fact but show the person's state of mind, what their plans are, what they are thinking right now.  It doesn't prove truth of the things asserted, but it does show what their state of mind is, what their intention is.

*Id.* at 45.

Tanya Salas' statement at issue was part of testimony relating to entries made in the victim's diary.  *Id.* at 68-70.  The diary itself was admitted for the limited purpose of demonstrating the victim's state of mind and her relationship with petitioner.  *Id.* at 67-68.  In this context, the prosecutor asked Tonya Salas what the victim told Tonya about her relationship with petitioner.

Q:   We talked earlier about  -- a little bit about the defendant's lifestyle.  What did your sister tell you that she wanted to do about his lifestyle?

A:   Change it.  Have him change it.

Q:   How was she going to do that?

A:   She couldn't so she didn't want to be with him.

Q:   Did she ever threaten him?

A:     Yeah, she was going to turn him in.

Q:     That's what I'm talking about.  Tell us what that was about.

A:     They would go back and forth arguing.  She threatened to turn him in a couple of times.  I remember her telling me he threatened to kill her, and she just -- you know, I didn't take it seriously or anything and I didn't think she did either because it was just a type of thing going back and forth of them threatening each other just to get each other mad.

*Id.* at 69.

Prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial before habeas corpus relief becomes available. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).  The appropriate standard of review for a prosecutorial misconduct claim on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*  The court should consider four factors in determining whether a prosecutorial remark rises to the level of a due process violation: "(1) whether the remark tended to mislead the jury or to prejudice the accused; (2) whether the remark was isolated or extensive; (3) whether the remark was accidentally or deliberately placed before the jury; and (4) the strength of the evidence against the accused."  *Hutchison*, 303 F.3d at 750.

There is no basis for petitioner's claim that the prosecutor engaged in misconduct by seeking this testimony from Tanya. Based on the court's ruling at trial, Tanya's testimony recounting the conversations with the victim was ruled admissible to show the victim's state of mind and the nature of her relationship with petitioner. Furthermore, Tanya testified that neither she nor the victim took the threats seriously. Petitioner was not prejudiced by the prosecution's elicitation of this isolated testimony, and has failed to establish prosecutorial misconduct with respect to Tanya Salas' testimony. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676.

### ii. Failure to produce telephone records

Next, petitioner contends that the prosecutor engaged in misconduct by failing to turn over telephone records of Jose Salas and Robert Shaw which would have impeached the testimony of the prosecution's witness, Tobias Allen, who testified that he overheard various telephone conversations. Petition at 63. Petitioner contends that the failure to turn over such telephone records constituted a *Brady* violation. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process were the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; it must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Spirko v. Mitchell*, 368 F.3d 603, 609-10 (6th Cir. 2004).

Petitioner presents no evidence to support his assertion that the government obtained the telephone records at issue. Petitioner simply states, without any citation, "Detective Nowicki notes states: 'he need [sic] to obtain these records.'" Petition at 63. Contrary to petitioner's claim, nothing in the record suggests that the government obtained the telephone records or that such telephone records even existed, or that they would have been advantageous to petitioner. Petitioner has failed to establish a any basis for a *Brady* violation or prosecutorial misconduct with respect to telephone records. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676.

**b.      Issue X**

Next, petitioner contends that his trial counsel provided ineffective assistance.[2] Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690. Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687. Rather, "the Sixth Amendment right to the effective assistance of counsel entitles [petitioner] to nothing more than a 'reasonably competent attorney' whose performance falls 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* A trial counsel's tactical decisions are particularly

---

[2] The court denied petitioner's motion for an evidentiary hearing on his claims for ineffective assistance of counsel. Order of Oct. 23, 2003. The court reserved "the right to schedule an evidentiary hearing at a later date if the court decides such a hearing is required to evaluate petitioner's habeas claims." Upon reviewing petitioner's habeas claims, I conclude that such a hearing is unnecessary.

difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*

### 1.    Counsel's trial strategy

In Issue X(a), petitioner contends that his trial counsel failed to develop a rational trial strategy by failing to call three witnesses, Brian Foster, Aldrus Gibson and Eric Williams and by arguing that "there was a mangled investigation" Petition at 65-67.

After reviewing the record as a whole, the court concludes that petitioner's counsel's conduct at trial was not that of an unprepared attorney without a rational trial strategy.  Counsel demonstrated an adequate understanding of the legal and factual issues involved in petitioner's case, engaged in vigorous cross-examination of the prosecution's numerous witnesses, presented two witnesses on petitioner's behalf, and prompted the prosecution to present two rebuttal witnesses. Counsel also engaged a private investigator, Tracy Kamerling, to locate and interview witnesses. In her closing argument, counsel argued several points, included the lack of evidence, a "mangled investigation" by the police, and the credibility of several witnesses, including Tobias Allen and Aaron Shaw.  Trial Trans. XV at 55-69, 72-87.

Petition also contends that counsel was ineffective for failing to call three witnesses. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  For example, counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  "[A] particular decision not to investigate

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  Recognizing that under federal constitutional analysis, a counsel's tactical decisions are particularly difficult to attack,  petitioner's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* (quoting *Strickland*, 466 U.S. at 690).  Petitioner falls far short of meeting that challenge here.

Petitioner contends that counsel failed to investigate Brian Foster.  Petitioner admits that his counsel employed an investigator, Ms. Kamerling.  At the trial, Ms. Kamerling testified that she attempted to locate Brian Foster.  Trial Trans. XIV at 25-27.  The record demonstrates that petitioner's counsel made substantial efforts to contact Brian Foster.  At one point, Brian Foster's mother scheduled an appointment (at an apparently vacant house) and never showed up. *Id.* at 25-26. Contrary to petitioner's contention, the record suggests that counsel attempted to locate Brian Foster but he did not want to be found.  Petitioner has submitted an affidavit from Foster, in which Foster stated that he "really did not want to be involved in any kind of murder investigation."  Foster Aff. attached to petition as Exh. D. Foster's affidavit also states that in April 1997 he told a detective that he knew nothing about the murder.  *Id.*   Foster also stated that he did not want to be involved in the murder investigation and "so I just kept my mouth shut."  *Id.*  Nothing in the record suggests  that petitioner's counsel overlooked Foster as a witness.

Next petitioner contends that counsel never interviewed Aldrus ("Putt") Gibson. Petitioner contends that this was a critical error "based on the questions asked Tobias Allen and

Aaron Shaw." Petition at 67. Petitioner does not explain the referenced "questions," merely citing two pages of testimony, in which his counsel asked Tobias Allen if he knew "Putt" and if he and Putt were friends. Trial Trans. VIII at 36-37. This testimony does not suggest that Putt was a key witness, or even a substantial witness in the prosecution's case. Petitioner's claim does not present an error of constitutional magnitude with respect to counsel decision not to call Putt Gibson as a witness.

Finally, petitioner contends that Eric Williams would have testified that he was having a relationship with the victim at the time of the murder. Petitioner supports this contention by referring the court to an undated newspaper article regarding the trial of Rickie Hicks, who was accused in the shooting death of Eric Williams. *See* Appendix C attached to Petition. Petitioner offers nothing to suggest that counsel was ineffective for failing to call Williams as a witness.

In summary, more is required of petitioner than to simply allege more witnesses should have been called. Petitioner's contention that counsel was ineffective for failing to call these three witnesses does not rebut the presumption that counsel presented a rational trial strategy and performed an adequate pre-trial investigation.

### 2. Counsel's impeachment of Tobias Allen and Tanya Salas

In Issue X(b), petitioner contends that his counsel failed to properly impeach Tobias Allen. Petition at 67-71. Specifically, petitioner sets forth Tobias Allen's testimony regarding the first time that petitioner asked him to kill the victim. Trial Trans. VII at 41-42. Petitioner states that his counsel was ineffective for failing to impeach Tobias Allen on five points: (1) when the planning took place; (2) who was present when the murder was being planned; (3) whether there was an accomplice; (4) how the murder was going to be committed; and (5) where the conspirators were

when they formulated the plan to murder.  Petition at 69.   Petitioner contends that counsel should

have impeached Tobias Allen with an April 30, 1997 taped statement, his preliminary examination

testimony and a hand-written statement from July 1997.  *Id.*

        Petitioner's contentions are without merit.  The quoted testimony did not involve

petitioner and co-defendant Russell Allen.  Rather, this testimony involved petitioner's first request

to have Tobias Allen kill the victim.  At that time, Allen testified that their first plan was to have him

go in the house, take the baby somewhere else and then strangle the victim with "this kind of wire

thing with a stick on the back."  Trial Trans. VII at 42.  Tobias Allen testified that he did not kill the

victim on the appointed date because he "didn't have nothing against her."  *Id.* at 42-43.  Tobias

Allen testified that petitioner was mad because he did not kill the victim, and that petitioner set up

the murder three or four times.  *Id.* at 43-44.  Each time, Tobias Allen would make an excuse, such

as he was drunk, he was with his girl or he forgot about it.  *Id.* at 44.  Tobias testified that after a

while  petitioner "kind of backed down and went to [co-defendant] Russell [Allen]."  *Id.*

        Petitioner's sole contention is that his counsel should have more thoroughly

impeached Tobias Allen regarding petitioner's first unsuccessful plan to have Tobias kill the victim.

Co-defendant's counsel cross-examined petitioner regarding the plan to have Tobias kill the victim.

*Id.* at 80-81.  Tobias admitted that he did not tell the police about the first plan to kill the victim

during an interview on April 1, 1997, but that he told police about the plan when he was arrested for

possession with intent to deliver cocaine on April 30th.  *Id.* at 81-82.  Tobias admitted that he

decided to tell the police everything about the victim's murder and that the police "cut [him] a deal"

at that time.  *Id.* at 82.  Co-defendant's counsel cross-examined Tobias regarding his April 30, 1997

statement.  *Id.* at 84-86.  In summary, the record reflects that co-defendant's counsel conducted a lengthy cross-examination of Tobias.  Trial Trans. VII at 76-118.

        The record also reflects that petitioner's counsel cross-examined Tobias Allen regarding petitioner's plan to have Tobias kill the victim.  *Id.* at 123.  Once again, Tobias admitted that he did not mention this information to the police until after he was arrested on the cocaine charge. *Id.* at 123-24; Trial Trans. VIII at 12.  Tobias admitted that he gave false information to the police and that he lied about his name.  Trial Trans. VII at 123-24.  The record reflects that petitioner's counsel conducted a lengthy cross-examination of Tobias Allen.  Trial Trans. VII at 118-27; VIII at 4-39.  Both petitioner's counsel and his co-defendant's counsel conducted re-cross-examinations of Tobias.  Trial Trans. VIII at 55-62.

        Petitioner's counsel established that Tobias Allen lied to police about his name, withheld information from the police about his previous attempts to kill the victim, and did not offer information about petitioner's conspiracy to kill the victim until after he was arrested on a cocaine charge.  Both petitioner's counsel and co-defendant's counsel successfully impeached Tobias Allen.  Good questioning on cross-examination does not require counsel to touch on every piece of evidence; this may actually be detrimental if, for example, it enhances the witness' credibility.  Rather, defense counsel may decide to concentrate only on those areas where the witness is particularly vulnerable, where the witness may best be impeached so as to leave in the minds of the jurors the witness' lack of veracity, opportunism and per chance for self-serving conduct, etc.   It is up to the attorney in the midst of trial, who must assess the testimony a hostile witness is giving and evaluate the effect of that testimony on the jury, to decide which questions are best asked or unasked. It is not the responsibility of a reviewing court in the comfort of hindsight to say it would have done

the job better, but to ask if counsel is deserving of the presumption.  "Simply put, impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."  *Millender v Adams,* 187 F.Supp. 2d 852, 872 (E.D. Mich. 2002), aff'd 376 F3d 520 (6th Cir. 2004).  Here, the issue of Tobias Allen's credibility was effectively placed in front of the jury.  Accordingly, petitioner's counsel was not ineffective in her  cross-examination of Tobias Allen.

Petitioner also claims that counsel failed to cross-examine Tanya Salas regarding her testimony that the problems between petitioner and the victim stemmed from petitioner's lifestyle as a drug dealer and that the victim did not like his lifestyle.  Petition at 70; Trial Trans. XIII at 44-46. Petitioner contends that the victim was dating a drug dealer named Eric Williams and that he "made this known to his counsel before trial."  Petition at 70. On cross-examination, petitioner's counsel elicited testimony from Tanya Salas: that she did not care for petitioner; that although the victim was the mother of petitioner's child, petitioner was not allowed to come to the house to visit his child; that petitioner and the victim had a very stormy relationship over a 2 1/2 year period; that Tanya Salas and the victim would argue just as much as petitioner and the victim; and that when their "relationship was on, there were a lot of times [the victim] and [the petitioner] went to a motel for the evening."  Trial Trans. XIII at 76-79.

Assuming that petitioner told his counsel that the victim had dated Williams, counsel's decision not to inquire into this particular issue did not amount to ineffective assistance. On cross-examination, counsel established that Tanya Salas did not like petitioner, that she often argued with the victim and that petitioner and the victim had an "off" and "on" relationship for over two years.  Counsel successfully impeached Tanya Salas and created factual issues regarding her

dislike of petitioner, her own stormy relationship with the victim and the status of petitioner's relationship with the victim. Accordingly, petitioner's counsel was not ineffective in her cross-examination of Tobias Allen.

### 3.    Telephone records and Amanda Rathsback

In Issue X(c), petitioner contends that counsel failed to obtain exculpatory evidence in the form telephone records from petitioner's mother's apartment and that counsel failed to re-call a prosecution witness, Amanda Rathsack.

Petitioner characterized the prosecution's theory as including a plan by which petitioner lured the victim to a location on 39 and 43 Burton Street where Russell Allen would then kill her. Petition at 71. This theory is supported by Tobias Allen's testimony that he overheard petitioner talking to the victim on the telephone, begging her to come to that address. *Id.* Petitioner points out an inconsistency between Tobias Allen's testimony and the testimony of Tanya Salas, because Tanya testified that the victim called petitioner. *Id.* at 71-72. Tobias Allen testified that on March 29, 1997, he overheard petitioner make a phone call to the victim "begging [her] to come over to the house." Trial Trans. VII at 50-53. For her part, Tanya Salas testified that petitioner called the victim on Saturday night [October 29, 1997]. Trial Trans. XIII at 56. The purpose of the phone call was for the victim to go to petitioner's house. *Id.* at 56-57. Tanya testified that the victim did not want to go, but that petitioner said he would go to church with her if she went over. *Id.* Petitioner also told the victim to call him before she came to pick him up. *Id.* at 57-58. Tanya further testified that the victim called petitioner as instructed and left around 9:50 or 10:00 pm. *Id.* at 58-59. At 10:30 or 10:45 p.m. Tanya received a telephone call that the victim had been shot. *Id.* at 58-59.

27

Petitioner contends that counsel failed to obtain telephone records to prove that Tobias Allen could not have overheard petitioner.  Petitioner's claim is meritless.  The testimony of Tobias Allen and Tanya Salas is consistent.  There was no reason for counsel to obtain telephone records.

Petitioner also contends that his counsel failed to recall a witness, Amanda Rathsack, who "testified that she heard [p]etitioner tell her mother that [the victim] was always threatening to tell the police about his drug dealings." Petition at 72.  The record reflects that Rathsback testified that one time she heard petitioner tell her mother that the victim "was always threatening" to turn petitioner in to the police  about "[h]is drug deals and stuff like that." Trial Trans. VII at 9-10. Rathsback testified that the conversation occurred about four months prior to the victim's death. *Id.* at 10. Petitioner states that after Rathsback testified, she told the prosecutor that it was Tobias Allen that she overheard talking to her mother rather than petitioner.  Petition at 72.  Petitioner states that the prosecutor did not correct the testimony and that he informed his own counsel, but she failed to recall Rathsback.  The only support for petitioner's claim is his self-serving affidavit attached to his petition.  Petitioner has not even provided an affidavit from Rathsback recanting her testimony. Petitioner has not established a sufficient factual basis to support this claim for ineffective assistance of counsel.

### 4.      Tanya Salas' testimony

In Issue X(d), petitioner contends that his counsel failed to object to Tonya Salas' testimony regarding the victim's lifestyle and threats the victim made to turn petitioner over to police for selling drugs.  Petition at 73-75.  Petitioner's contention is factually incorrect and without merit. As the court previously discussed, petitioner's counsel objected to this line of questioning and

counsel's objection was overruled.  Furthermore, the court allowed Tanya's testimony to show the victim's state of mind.  Petitioner has failed to establish that his trial counsel was constitutionally ineffective.  Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676.

Accordingly, petitioner has failed to demonstrate a valid claim of ineffective assistance of appellate counsel as alleged in Issue XI and, as a result, cannot demonstrate cause for the procedural default of Issues IX and X.  Petitioner's failure to demonstrate cause prevents federal habeas review of this issue unless the court's failure to do so will result in a  "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  As the court previously discussed, there is no fundamental miscarriage of justice in this case.  Accordingly, petitioner's Issues IX and X are not subject to federal habeas review, and his Issue XI should be denied as without merit.

### III.   Petitioner's Habeas claims

### A.   Exhaustion

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971);  *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has exhausted his remaining habeas claims, Issue I (sub-issue 2) and Issue II, in the Michigan state courts.

### B.   Issue I (sub-issue 2)

In Issue I (sub-issue 2), petitioner contends that the trial court improperly allowed Tobias Allen's hearsay testimony on a number of issues.  The Michigan Court of Appeals addressed those claims as follows:

29

Turning to defendant's specific complaints, he first asserts that Tobias' testimony that defendant's relationship with the decedent had deteriorated constituted inadmissible hearsay. Hearsay is a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Consequently, defendant's argument fails because Tobias' testimony that defendant's relationship with the decedent was "getting worse" does not constitute hearsay, as it was not an out-of-court statement and was apparently based on Tobias' own observations.

Defendant also asserts that Tobias' testimony that the decedent was threatening to inform the police of defendant's drug dealing was inadmissible hearsay. The testimony was not hearsay because it was not offered to prove the truth of the matter asserted, but merely to establish that the decedent had in fact made such threats. Further, the statement was admissible under the state of mind exception to the hearsay rule, MRE 803(3), to show that defendant believed that the decedent had threatened him. *See People v. Rice (On Remand)*, 235 Mich.App 429, 440; 597 NW2d 843 (1999) ("Proof of motive in a prosecution for murder, although not essential, is always relevant...."). Even if the statement does not fall under any hearsay exception, defendant was not prejudiced by the admission of the testimony, as it was cumulative to Tanya Salas' testimony that she had heard the decedent threaten to alert the police to defendant's drug-related activities.

Next, defendant objects to testimony that Tobias overheard defendant call the decedent several times on the day of the shooting and that defendant asked Tobias to kill the decedent for him. However, this testimony was not hearsay, as it was Tobias' description of events that he witnessed. Likewise, defendant's complaint regarding Tobias' testimony that he went to the bar and saw codefendant Allen prior to leaving is without merit. The challenged testimony does not constitute hearsay, as it describes what Tobias himself did and saw.

In addition, defendant complains that Tobias should not have been allowed to testify that he observed defendant and Allen isolate themselves in order to have private conversations. We disagree. Tobias offered no testimony regarding the contents of the conversations. Accordingly, the testimony was not hearsay, as it was based on events witnessed by Tobias, and it was properly admitted.

*People v. Shaw*, No. 211825 (Mich. App.), slip op. at 1-2.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990).  Consequently, State court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *Clemmons v. Sowders*, 34 F.3d 352, 357-358 (6th Cir. 1994); *see Estelle*, 502 U.S. at 67-70.   In determining whether an alleged trial error violated the constitution, the court must "evaluate whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Clemmons*, 34 F.3d  at 357 *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).   In short, petitioner must establish "actual prejudice" to warrant habeas relief. *Clemmons*, 34 F. 3d  at 357-358.

Here, the Michigan Court of Appeals held that the trial court properly admitted Tobias Allen's testimony because it was either not hearsay or because it fell within a valid hearsay exception. There was no error under Michigan law. Petitioner has not demonstrated the existence of a federal constitutional issue on this state evidentiary matter.  The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

## C.    Issue II

Finally, in Issue II, petitioner contends that he was denied a fair trial by certain testimony offered by Laura Riddle, regarding statements made by petitioner's co-defendant Russell Allen.  Riddle testified that Russell Allen, Aaron Shaw and Aaron's friend Amy Hennrick spent the night at her mother's house after the murder.  Trial Trans. IX at 129-39.  During the night, Riddle was awakened by Russell Allen crying.  *Id.* at 139-40.  Riddle testified that Russell Allen woke up

Amy Hennrick and said "[s]he was after me, and that she is all bloody." *Id.* at 140. Counsel for Allen Russell objected to the testimony, but the court overruled the objection and allowed the testimony. *Id.* at 138.

The court advised the jury to view this testimony with caution:

> Ladies and gentlemen, I want to say a word to you about some of this testimony, because I am a little puzzled by it, and I want to make a comment about it.

> You have heard some testimony that this witness overheard Russell Allen talking to Amy about someone being all bloody or something, and later it is described as a dream, although he is awake when he is saying these things to her. I would ask you to consider that testimony with caution. It's a little hard to describe. People have many dreams, and they dream sometimes about things which they have not done, as we all know, but things that bother them. So I would ask you to consider that when you are considering that testimony.

*Id.* at 142-43.

The Michigan Court of Appeals addressed this issue as follows:

Defendant next contends that he was denied a fair trial because Laura Riddle was permitted to testify that she was awakened by codefendant Allen crying and heard him tell Amy Hennrick, "She was after me, and that [sic] she is all bloody." This Court reviews the trial court's decision to admit evidence for an abuse of discretion. [*People v. Adams*, 233 Mich. App. 652, 656; 592 N.W.2d 794 (1999).]

Defendant did not object to Riddle's testimony at trial; however, codefendant Allen contemporaneously objected. The trial court allowed the testimony but gave the jury a cautionary instruction. Codefendant Allen's request for a mistrial at the conclusion of Riddle's testimony was denied. Because defendant's codefendant raised the objection, and the trial court's ruling obviously affected both defendants, this Court may choose to address the issue despite the fact that it is technically not preserved. *See People v. Griffin*, 235 Mich.App 27, 41, n 4; 597 NW2d 176 (1999).

Defendant contends that the statement was inadmissible hearsay. Defendant is mistaken. The statement was not hearsay because it was not offered to prove the truth of the matter asserted, that is, that a bloody woman had been chasing Allen.

Rather, the statement was offered as evidence that Allen was troubled by the fact that he had killed the decedent.

In arguing that the trial court abused its discretion in allowing the testimony, defendant also relies on a number of cases from other jurisdictions in which courts have ruled that testimony concerning statements made while the declarant was sleeping were unreliable and therefore inadmissible. For the most part, these cases are not on point because Allen was awake at the time that he made the statement at issue. However, in *State v. Tyler*, 251 Kan 616; 840 P.2d 413 (1992), the Kansas Supreme Court held that a witness' testimony reading the defendant's description of a dream had been improperly admitted. The court explained:

> It is an abuse of discretion to admit evidence of a defendant's sleep-induced dream to prove his state of mind. Such evidence is too speculative to be reliable. Although [the defendant's] statement to [the witness] was not part of the actual dream, it was so closely related to the dream that it also lacks probative value. [*Id.* at 632.]

We believe that the reasoning of the *Tyler* court is applicable in the instant case and therefore conclude that the trial court erred in admitting Riddle's testimony. Nevertheless, the error was harmless. In view of both the cautionary instruction provided by the trial court and the considerable evidence that defendant hired Allen to kill the decedent, it is more probable than not that the outcome would have been the same absent the error. *See People v. Lukity*, 460 Mich. 484, 496; 596 NW2d 607 (1999).

*People v. Shaw*, No. 211825 (Mich. App.), slip op. at 2-3.

As the court previously discussed, federal habeas corpus relief does not lie for errors of State law unless the error denied the petitioner a fundamentally fair trial. *Estelle*, 502 U.S. at 67-70; *Clemmons,* 34 F.3d at 357-358.  Here, the Michigan Court of Appeals concluded that while the trial court erred in admitting the "dream" testimony, the error was harmless, in light of the trial court's cautionary instruction and the considerable evidence that defendant hired Russell Allen to kill the victim.  In an earlier portion of the opinion, the Michigan Court of Appeals found sufficient evidence to support petitioner's convictions, summarizing that evidence as follows:

Aaron Shaw testified that defendant told him that defendant wanted to "get rid of" the decedent. Tobias Allen testified that defendant asked him to kill the

33

decedent and on three or four occasions formulated a plan where Tobias was supposed to kill the decedent while defendant established an alibi. When Tobias failed to kill the decedent every time, defendant asked him if he knew anyone who would "do the job." Tobias told defendant that codefendant [Russell]Allen needed money. Subsequently, both Aaron and Tobias observed defendant and [Russell] Allen having private conversations, and defendant stopped asking Tobias to kill the decedent. The day of the shooting, Tobias heard defendant say to [Russell] Allen, "Only chance we got, is you going to do it?" [Russell] Allen responded, "I will do it, man, don't worry, stop sweating me." Tobias also heard defendant call the decedent and repeatedly ask her to come over until she agreed. Renae Winegar testified that she heard defendant tell Tobias after the shooting that he had paid [Russell] Allen $3,500, but would not pay him the rest of the money because [Russell] Allen had been talking.

*People v. Shaw*, No. 211825 (Mich. App.), slip op. at 7, n. 1.

I agree with the Michigan Court of Appeals' conclusion that the allowance of this testimony was harmless error, given the trial judge's cautionary instruction and the significant evidence supporting petitioner's convictions. The trial court's error did not deny petitioner a fundamentally fair trial. *Clemmons*, 34 F.3d at 357. Petitioner has failed to establish that this trial court evidentiary error resulted in actual prejudice warranting federal habeas relief.

The Michigan Court of Appeals' resolution of the issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### Recommendation

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  October 28, 2005          /s/ Hugh W. Brenneman, Jr.
                                  Hugh W. Brenneman, Jr.
                                  United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).